IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL MALISH and DEBRA MALISH, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Case No.: 2:17cv676-MHT-SMD ) |
| PATRICIA DAWN HURST, *et al.*, | ) ) |
| Defendants. | ) |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.   INTRODUCTION

On October 6, 2017, Michael Malish ("Plaintiff M. Malish") and Debra Malish ("Plaintiff D. Malish")[1] filed a complaint (Doc. 1) against Patricia Dawn Hurst ("Defendant Hurst"), GEICO General Insurance Company, and GEICO Casualty Company (collectively "GEICO"), arising from an automobile accident that occurred on June 26, 2017, in Prattville, Alabama. *See generally* (Doc. 1). Plaintiffs' complaint alleges that Plaintiff M. Malish, who was driving his vehicle at the time of the collision, sustained physical injuries from the accident; past and future medical expenses; pain and suffering; lost wages; property damage; and mental anguish. *Id.* at 5. The complaint also alleges that Plaintiff D. Malish, who was not in the vehicle at the time of the collision,

---

[1] While the case style spells Defendant's name Hurst, the undersigned notes that, in Defendant Hurst's motion for partial summary judgment and evidence in support thereof, her last name is spelled Hust. *See generally* (Doc. 29). In this recommendation, the undersigned will refer to Defendant as Hurst. However, in so doing, the undersigned means no disrespect to Defendant if her last name is indeed Hust.

"suffer[ed] a loss of her husband's society, services[,] and comfort." *Id*. at 6. The complaint sets forth claims of negligence and wantonness against Defendant Hurst based upon her involvement in the accident. *See generally* (Doc. 1).

On September 7, 2018, Defendant Hurst filed a motion for partial summary judgment to dismiss Plaintiffs' wantonness claim against her and a brief in support thereof. (Doc. 29). Plaintiffs filed a timely opposition to Defendant Hurst's motion. (Doc. 31). The matter is fully briefed and is ripe for recommendation to the United States District Judge.[2]

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

---

[2] The United States District Judge referred this case to the United States Magistrate Judge on January 23, 2018, "for consideration and disposition or recommendation on all pretrial matters as may be appropriate." (Doc. 19).

2

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the non-moving party must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50

4

("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

A reviewing court is restrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland*, 692 F.3d at 1154 (citations and quotations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

    **B.**    **Statement of Facts**[3]

---

[3] On February 5, 2018, the previous United States Magistrate Judge assigned to the case entered an Order (Doc. 22) setting out briefing directives regarding dispositive motions. In the Order, the Magistrate Judge specifically stated: "All briefs in support of and in opposition to a motion for summary judgment shall include a statement of facts divided into two parts: Uncontested Facts and Contested Facts. Before the filing of a motion for summary judgment, the parties shall confer and agree upon the facts which are uncontested; those facts shall be identical in each party's brief. The Court will rely upon the parties' representations in its determination of whether there is a genuine issue of material fact." Doc. 22 at 2, ¶ 5. The Order further stated: "Failure to comply strictly with this order could result in dismissal of the motion or appropriate sanctions." *Id*. at 3, ¶ 9.

Neither party has complied with the Magistrate Judge's order in their filings. The closest either party comes to compliance is Defendant Hurst's introductory statement contained within her motion, providing that "[m]any of the facts surrounding the accident, i.e. who hit who, how fast the parties were traveling, etc.[,] are in dispute." Doc. 29 at 1. However, neither party has provided a statement of disputed or undisputed facts relevant to the pending motion for partial summary judgment as required by the court's previous order. Thus, the parties have shifted the burden of sorting through the disputed and undisputed facts onto the court.

While the undersigned notes that the motion for partial summary judgment could be dismissed for failure of the parties to strictly comply with the briefing Order, the undersigned does not find such a

On June 25, 2017, around 10:00 a.m., Defendant Hurst began traveling from Michigan to Florida in a 2002 Cadillac Escalade.[4] (Doc. 29-1) at 8, 18; (Doc. 30-1) at 2. That evening, she stopped at a motel approximately an hour-and-a-half north of Prattville, Alabama, to spend the night. (Doc. 29-1) at 18. The following morning, she continued her trip to Florida. *Id*. at 35. It was a sunny day, and no weather conditions impeded Defendant Hurst's ability to drive. *Id*. at 36. After seeing a sign for gasoline and McDonald's, Defendant Hurst exited the interstate and onto an off-ramp round 9:20 a.m. *Id*. at 43. As Defendant Hurst attempted to merge into the oncoming traffic, her vehicle collided with the vehicle of Plaintiff M. Malish. *Id*. at 43.

> Defendant Hurst describes the events leading up to the accident as follows:
>
> Oh, I was driving down the expressway and I saw a sign and, you know, the gas and McDonald's sign, so I slowed down and went up to – up the ramp, you know, slow speed. And I always stop. In Michigan we have ramps like that also that it's kind of a sharp turn and there's accidents there all of the time, so I always stop and look at traffic. And I was – the gas station was like right there, so I stopped and then I made a turn and no one was coming. And as soon as I made my turn, something hit me so hard, I couldn't even believe it.

*Id*. at 43.

> Plaintiff M. Malish's version of the events are as follows:
>
> I was moving through traffic, so I wasn't by myself. There was a vehicle in the left-hand lane. I was in the right-hand lane. There was vehicles behind me, and we were doing normal – normal flow. Doing 40, 45 miles an hour.

---

strong sanction warranted in this instance. Nonetheless, the parties—moving forward in this case and in future litigation in federal court—should be cognizant of the requirements of court orders and follow those orders completely.

[4] Defendant Hurst did not own the Cadillac Escalade, but had driven it from Michigan to Florida at least four times prior to her June 25, 2017, trip. (Doc. 30-1) at 3.

> And as I came to the other side of the interstate – on the Prattville side of the interstate – I really never saw her until the last brief second she was coming off the interstate, and I caught her out of my peripheral coming, and I knew that she was fixing to hit me. But there was – it was – like I said, it was the last instant. And she was starting to slide sideways, and she caught the back end of my vehicle with the back end of her vehicle as it was sweeping around, and it turned me sideways, and it rolled.

(Doc. 29-2) at 32-33.

Defendant Hurst was not under the influence of alcohol or illegal drugs on the morning of the accident or the twenty-four hours prior to. (Doc. 29-3) at 1, ¶¶ 3, 4. She was not talking, texting, using apps, or browsing the internet on her cell phone at the time of the accident. *Id*. at 1-2, ¶¶ 6-8.

Although Plaintiff references certain "facts" concerning Defendant Hurst's speed as she exited the interstate and her actions as she entered the merging lane onto Cobbs Ford Road, *see* (Doc. 30) at 2-3, Plaintiff has not submitted evidence to support these facts,[5] nor have they been agreed upon by the parties. Therefore, they will not be considered in the undersigned's recommendation for Defendant Hurst's motion for partial summary judgment.

### C. The Substance of Defendants' Motion and Plaintiff's Response in Opposition

Defendant Hurst argues that Plaintiffs cannot maintain a wantonness claim against

---

[5] Notably, Plaintiffs' motion portends to support the aforementioned facts by referencing "Exhibit B, Affidavit of Stephanie Reese Kelley." (Doc. 30) at 2-3. However, attached to Plaintiffs' response in opposition to partial summary judgment is only one document, referenced as "Exhibit 1." *See* (Doc. 29). Within Exhibit 1, "Exhibit A" contains portions of the deposition of Defendant Hurst. *See* (Doc. 30-1) at 1-11. "Exhibit B," also included in Exhibit 1, is a portion of Plaintiff M. Malish's deposition. *See* (Doc. 30-1) at 12-14. Nowhere within Plaintiffs' filing is there an affidavit of Ms. Kelley.

her because "there is no evidence supporting an inference that Defendant Hurst was wanton in her conduct on the morning of June 26, 2017." (Doc. 29) at 5. Specifically, Defendant Hurst asserts that there are "no implications that [Defendant] Hurst had a reckless disregard for [Plaintiff M. Malish's] health and well-being or that [Defendant] Hurst exited the ramp with an intention to cause the accident." *Id*. Because, Defendant Hurst argues, "this case does not support an inference of wantonness[,]" she requests that the court grant the motion for partial summary judgment and dismiss Plaintiffs' wantonness claim. *Id*.

Plaintiffs oppose summary judgment, arguing the wantonness claim against Defendant Hurst should survive summary judgment because "there are more than sufficient facts on the record to allow a jury to conclude that [Defendant Hurst's] actions were 'inherently reckless.'" (Doc. 30) at 1-2. Specifically, Plaintiffs reference the condition of the vehicles after the accident occurred; the speed of Defendant Hurst as she exited the interstate; Defendant Hurst's familiarity "with how dangerous and accident prone Interstate exit ramps are;" Defendant Hurst's knowledge that the vehicle she was driving was "a weapon;" and Defendant Hurst's failure "to maintain control of her vehicle due to her excessive speed" which caused her to "leave her lane and cross over into the lane in which [Plaintiff M. Malish] was traveling."[6] *Id*. at 6, 8.

---

[6] As previously noted by the undersigned, several of Plaintiffs' proposed "facts" are unsupported by the record submitted in opposition to Defendant Hurst's motion for partial summary judgment. *See infra* n. 5.

8

### D. Plaintiff's Wantonness Claim[7]

"To hold a defendant liable for wanton conduct under Alabama law, a plaintiff must establish a high degree of culpability." *Craft v. Triumph Logistics*, 107 F. Supp. 3d 1218, 1220 (M.D. Ala. 2015) (referencing, *e.g., Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998)). While negligent conduct is characterized by "inattention, thoughtlessness, or heedlessness" and "a lack of due care," *Monroe v. Brown,* 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004) (Thompson, J.), wantonness is characterized by "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result," *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007). Wantonness may also be shown if the actor, conscious of the existing conditions, displays a "reckless disregard" for the safety of others, *see* Ala. Code § 6–11–20(b)(3) (1975) (punitive damages statute defining wanton conduct as "conduct which is carried on with a reckless or conscious disregard of the safety of others"). While the distinction between negligence and wantonness thus lies in the state of mind of the defendant, *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145 (Ala. 1987), no intent or design to injure the plaintiff is required, *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998). Nor is it "necessary that the actor know that a person is within the zone

---

[7] "Under the doctrine enunciated in *Erie* and its progeny, 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (citing *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996)). Accordingly, the undersigned will turn to Alabama state law regarding Plaintiffs' wantonness claim.

9

made dangerous by his conduct" so long as "he knows that a strong possibility exists that others may rightfully come within that zone." *Frederick v. Wallis*, 3 So. 3d 904, 907 (Ala. 2008).

Evaluating a claim of wantonness under Alabama law necessarily begins with an examination of *Ex parte Essary*. In *Essary*, the Alabama Supreme Court set forth a well-recognized presumption to be applied to claims of wantonness. 992 So. 2d at 12. This presumption, often referred to as the *Essary* presumption, states that courts do not expect people to "engage in self-destructive behavior" and will presume against wantonness when the risk of injury to the actor is as real as the risk of injury to others. *Id*. Of course, this presumption is not without exception. Indeed, if (1) there is "some evidence of impaired judgment," such as alcohol consumption, (2) the conduct "is so inherently reckless that [the court] might otherwise impute to [the actor] a depravity consistent with disregard of instincts of safety and self-preservation," or (3) "the risk of injury to the actor is somehow not as real as the risk of injury to others," the presumption does not apply. *See Griffin v. Modular Transp. Co.*, No. 2:12-CV-2378-WMA, 2014 WL 896627, at *3 (N.D. Ala. March 6, 2014).

      i.    **Plaintiffs' Wantonness Claim Should Be Dismissed Because the *Essary* Presumption Applies.**

In arguing that the *Essary* presumption should not apply to the facts of this case, Plaintiffs point the court to three cases from the Northern District of Alabama. (Doc. 30) at 5-6. The first, *McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1237, 1240

(N.D. Ala. 2015), found that the *Essary* presumption against self-destructive behavior was not applicable because the risk of injury to the defendant, "who was driving a loaded tractor-trailer rig weighing approximately 74,000 pounds," was "certainly not as great as the risk of injury to the driver of th[e] other vehicle." Here, Defendant Hurst was driving an SUV—not a 74,000 pound tractor-trailer. Therefore, the facts in the case at hand are distinguishable from those submitted in *McCutchen* and do not support the conclusion that an exception to the *Essary* presumption should apply.

The second case cited by Plaintiffs, *Griffin v. Modular Transp. Co.*, 2014 WL 896627, at *4, found that "a jury could reasonably conclude that the second *Essary* Exception for inherent recklessness applie[d]" because the facts in that case were that the defendant "backed out his trailer" on to the highway and "blocked the two southbound lanes for an unknown period of time." Important to its determination that an exception to the *Essary* presumption applied, the court noted that the defendant drove an 18-wheel tractor trailer, and that *only* the flatbed portion of his tractor trailer blocked the highway. *Griffin*, 2014 WL 896627, at *4. Thus, the court concluded that the risk of injury to the defendant was less than the risk of injury to the drivers of the cars traveling along the blocked highway. *Id*. Here, as noted above, Defendant Hurst was driving an SUV—not a tractor trailer—leading the undersigned to conclude that, unlike *Griffin*, the risk of injury to Defendant Hurst was just as real as the risk to other drivers on the roadway. Further, Plaintiffs have submitted no supported facts that would lead the undersigned to conclude

that Defendant Hurst acted in such a way that her conduct was "so inherently reckless" to impute "a depravity consistent with disregard of instincts of safety and self-preservation."[8] *Id.* at 3 (citing *Jinright v. Werner Enterprises, Inc.*, 607 F. Supp. 2d 1274, 1276-77 (M.D. Ala. 2009) (Thompson, J.)). Because the undisputed facts here are distinguishable from those in *Griffin*, that opinion does not support the application of an *Essary* presumption exception in this case.

Plaintiffs' third case, *Smith v. Schwan's Food Serv.*, No. 7:13-CV-00844-RDP, 2015 WL 5559825, at *5 (N.D. Ala. Sept. 18, 2015), found that the *Essary* presumption did not apply because the defendant's actions "posed a much greater risk of injury to [the plaintiff], who was riding a bicycle, than to [the defendant], who was driving a large commercial truck." Clearly, those facts are substantially different than the undisputed facts presented in this case, making this case distinguishable from *Smith*. Nothing in *Smith* leads the undersigned to conclude that an exception to the *Essary* presumption should apply.

Because (1) there is no evidence of impaired judgment on the part of Defendant Hurst; (2) Defendant Hurst's conduct, based upon the undisputed facts presented to the undersigned for partial summary judgment, was not so "inherently reckless" that it might impute to her "a depravity consistent with disregard of instincts of safety and

---

[8] The undersigned notes that, even if Plaintiffs had supported the fact regarding Defendant Hurst's speed off the exit ramp—i.e., that she was traveling 50 miles per hour or greater—that fact, without more, does not exhibit behavior that the undersigned would find "inherently reckless" or deprave. If it did, almost every case in which speeding was involved could support a wantonness claim. The Alabama Supreme Court has rejected such a theory. *See Knowles By Harrison v. Poppell*, 545 So. 2d 40, 42 (Ala. 1989)

self-preservation," and (3) the risk of injury to Defendant Hurst because of her conduct was just as real as the risk of injury to other motor vehicle operators, the undersigned concludes that the *Essary* presumption applies in this case and that Plaintiffs' wantonness claim against Defendant Hurst should be dismissed.

> ii. **Even if this Court Concludes that the *Essary* Presumption Does Not Apply, Plaintiffs' Wantonness Claim Should Still Be Dismissed Because Plaintiffs Have Not Presented Sufficient Evidence to Maintain a Wantonness Claim.**

Even if this court were to determine that the *Essary* presumption did not apply, the analysis of Plaintiffs' wantonness claim would not end. Rather, for the wantonness claim against Defendant Hurst to survive summary judgment, the court would still have to conclude that Plaintiffs have presented sufficient evidence that, knowing the existing conditions surrounding the accident, Defendant Hurst was conscious her actions would likely or probably cause injury to another, or that she acted with reckless disregard for the same. *Essary*, 992 So. 2d at 9. Then, and only then, should Plaintiffs' wantonness claim be submitted to the jury. *Cash*, 603 So. 2d at 1003.

Plaintiffs rely primarily upon five pieces of evidence to show Defendant Hurst's conduct was inherently reckless and, therefore, wanton: (1) that Defendant Hurst exited the interstate at a high rate of speed; (2) that Defendant Hurst was familiar with how dangerous and accident prone interstate exit ramps are; (3) that Defendant Hurst knew that the vehicle she was driving was "a weapon"; (4) that Defendant Hurst, with this

---

(finding that "[s]peed alone does not import wantonness, and a violation of the speed law does not of itself amount to wanton misconduct").

knowledge, failed to maintain control of her vehicle due to her excessive speed; and (5) that because of her speed, Defendant Hurst left her lane and crossed over into Plaintiff M. Malish's lane. (Doc. 30) at 8. Because, Plaintiffs argue, Defendant Hurst "was aware of the dangers presented by exiting off the interstate in a large vehicle at a high rate of speed[,]" she acted recklessly and indifferently to the safety of Plaintiff M. Malish. *Id*. at 8-9. Therefore, Plaintiffs urge the court to allow the wantonness claim to survive summary judgment. *Id*. at 9.

Simply put, without more, Defendant Hurst's conduct is insufficient to create a genuine issue of material fact concerning wantonness. Clearly, Defendant Hurst made a conscious decision to exit the interstate and merge into lanes of oncoming traffic. While Plaintiffs assert that she was traveling at least fifty miles per hour as she exited, there is no evidence in the record supporting that conclusion. Further, even if there were evidence to that fact, the undersigned would not find the speed so excessive to constitute reckless or indifferent behavior. It is possible that Defendant Hurst's conduct was ill-advised and *potentially* negligent. Nonetheless, there is no indication that—at the time Defendant Hurst made the decision to exit the interstate and merge into oncoming traffic—she knew that her actions would likely or probably cause injury to another, or that she acted with reckless disregard for the same. *See Essary*, 992 So. 2d at 9. As such, the undersigned concludes that there is not sufficient evidence in this case to present Plaintiffs' wantonness claim to a jury and that Defendant Hurst's motion for partial summary

judgment should be granted.

IV.     CONCLUSION

In conclusion, the undersigned Magistrate Judge hereby

RECOMMENDS that Defendant Hurst's Motion for Partial Summary Judgment (Doc. 29) be GRANTED as to Plaintiffs' claim for wantonness. It is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 7, 2019**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 24th day of January, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE